UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


JEMARIO FREEMAN                         CIVIL ACTION NO. 11-cv-2039

VERSUS                                  JUDGE FOOTE

WARDEN, LOUISIANA STATE                 MAGISTRATE JUDGE HORNSBY
PENITENTIARY


## REPORT AND RECOMMENDATION

**Introduction**

Jemario Freeman ("Petitioner") elected a bench trial before Caddo Parish District Judge John D. Mosely, Jr. on charges of armed robbery and attempted second-degree murder arising from a robbery and shooting at the Thrifty Liquor Store on Hollywood Avenue in Shreveport. Petitioner was convicted on both counts, adjudicated a second habitual offender, and given lengthy prison sentences. He presented three issues on direct appeal. State v. Freeman, 34 So.3d 541 (La. App. 2d Cir. 2010), writ denied, 50 So.3d 827 (La.), and he now presents one of those issues—the voluntariness of his confession—in his federal habeas petition.

Petitioner also filed a post-conviction application in state court, but he has not yet exhausted his state court remedies with respect to the claims presented in that filing. He asked this court to stay this proceeding to await exhaustion of the post-conviction claims. For the reasons that follow, a stay should not be granted, and the petition should be denied.

**Stay and Abeyance**

The only issue presented in the federal petition is a claim that police violated the Fifth and Fourteenth Amendments during their custodial interrogation of Petitioner.  Petitioner asked at the end of the filing that the court consider his petition a protective application and stay this federal action until unspecified state court proceedings have concluded.  The court issued an order (Doc. 6) and advised Petitioner that he could go forward with this petition with the single claim or dismiss this petition and return with a petition that presented all claims Petitioner wished to present.  Petitioner was warned about the timeliness issues related to the procedures.

Petitioner responded (Doc. 7) by stating that he had filed a post-conviction application in state court on April 19, 2012 and presented additional (unspecified) claims that he might later wish to add to this petition by amendment.  The court waited several months before issuing an order (Doc. 9) that the State respond to the single claim presented in the petition. The court noted that Petitioner had not yet requested leave to add any additional claims.

The stay and abeyance requested by Petitioner "should be available only in limited circumstances."  Rhines v. Weber, 125 S.Ct. 1528 (2005).  Courts should be cautious about granting such stays because they undermine the AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition.  Id.  A "stay and abeyance is appropriate when the district court finds that there was good cause for the failure to exhaust the claim; the claim

is not plainly meritless; and there is no indication that the failure was for purposes of delay."
Id.

Petitioner's direct appeal process ended when the Supreme Court of Louisiana denied a writ application on November 24, 2010, so the federal limitations period began to run 90 days later on February 22, 2011.  Petitioner then had one year, until February 22, 2012, to (1) file a federal petition or (2) toll the federal limitations period by properly filing a post-conviction application in state court.  Petitioner did file this federal petition within the timeliness window, but he waited until April 2012 to file his state post-conviction application.

Petitioner has not shown good cause to further stay this 2011 case.  He could have simply filed his post-conviction application within the one year following the finality of his conviction, and his federal limitations period would have been tolled until the post-conviction proceedings were completed.  He could have then filed a timely federal petition that could include any claims exhausted on direct appeal or on post-conviction.  The State represents that Petitioner's post-conviction proceedings are still underway, and a hearing was scheduled to have been held in 2014.  It may be several months or even a few years before all stages of those proceedings are completed, and this court should not have to carry a case on its docket for several years merely because Petitioner jumped the gun and filed his federal petition rather than first filing the post-conviction application and tolling the federal period.  The court should exercise its discretion to deny a stay in this case to discourage such

prematurity and encourage proper exhaustion of all claims before the applicant comes to federal court.

**Relevant Facts**

Two men entered the Thrifty Liquor Store on Hollywood Avenue.  At least two clerks and a number of customers were inside.  Witnesses said the shorter man pulled a handgun and fired a shot into the ceiling.  He also fired a number of other shots, and six spent 9mm casings were collected by police.  The gunman was quoted as saying, "Give me the money - - I want all of it."  One of the robbers shouted, "I'm going to kill every m*** f*** in here!" Tracy Harrison, one of the clerks, said that the shorter man told her, "Bitch, I got you now - - - you can't leave."  She tried to run, but she was struck by a bullet and fell.

The men took a total of $1,389 from three cash registers and fled.  Police officers and EMT personnel initially thought Ms. Harrison was dead, but she gasped for air, and they began resuscitation efforts.  She required emergency surgery to repair a severed femoral artery and suffered a fractured femur.  She spent several days in the hospital and would have died without the surgery.  Ms. Harrison was popular with customers and those in the neighborhood, and Crime Stoppers was inundated with calls, many of which implicated "Mario" and "Gregory" as the robbers.  Detectives questioned Gregory Jenkins, who implicated Petitioner, Jemario Freeman.  Officers arrested Freeman three days after the robbery, and he gave a recorded statement in which he confessed his involvement, including being the person who fired all of the shots during the robbery.

**Free and Voluntary Statement**

Petitioner argues that his recorded statement, which was played at trial, was not made voluntarily.  A suspect has a right to be informed of his right to remain silent when faced with custodial interrogation, but the suspect may waive that privilege if the waiver is made voluntarily, knowingly and intelligently.  Miranda v. Arizona, 86 S.Ct. 1602, 1612 (1966). The inquiry whether a Miranda waiver is coerced has "two distinct dimensions."  Moran v. Burbine, 106 S.Ct. 1135, 1141 (1986).  First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception.  Id.  Second, the waiver must have been made with a full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it.  The totality of the circumstances surrounding the interrogation must reveal both an uncoerced choice and the requisite level of comprehension for a court to properly conclude the Miranda rights were waived.  Id.  See also Colorado v. Spring, 107 S.Ct. 851, 857 (1987).

A confession must also be voluntary to be admissible, and a judge must make a determination of voluntariness before the confession is admitted into evidence.  Jackson v. Denno, 84 S.Ct. 1774 (1964).  A finding of a voluntary and valid Miranda waiver is usually tantamount to a conclusion that the resulting confession was also voluntary.  Missouri v. Siebert, 124 S.Ct. 2601, 2608 (2004).

The trial judge heard testimony from Detectives Michael McConnell and Rod Demery about the circumstances surrounding Petitioner's arrest and his recorded statement.

Detective McConnell said that he went to the residence where Petitioner had been taken into custody.  Another detective at the scene told McConnell that Petitioner had already been given his Miranda rights.  Petitioner did not seem to act as if he were under the influence of any drugs or alcohol, but no nystagmus or drug tests were performed.  Drugs of some sort were found at the premises, and two other occupants of the residence were arrested on related charges.  Another officer transported Petitioner to the Detective Bureau.  Defense counsel asked McConnell about the possible effects of the drug ecstasy, but McConnell said that Petitioner did not appear to be on ecstasy.  Tr. 458-64.

Detective Demery testified that he and Sgt. Crow conducted the recorded interview of Petitioner at the Detective Bureau.  Demery advised Petitioner of his Miranda rights, which was recorded, and Petitioner signed a written waiver and agreed to speak to the officers.  Demery testified that Petitioner did not appear to be under the influence of drugs or alcohol, and the officers did not threaten or coerce Petitioner.

Petitioner described the robbery plan and, initially, said that he and co-defendant Colbert each had guns when they entered the store.  Petitioner said that he fired three shots, one at the ceiling and the others toward the cigarettes behind the counter where the clerks worked.  He claimed that Colbert also fired about three shots.  Sgt. Crow told Petitioner that he believed Petitioner had both guns, and Petitioner finally admitted that he did.  Petitioner denied that Gregory Jenkins, who had been implicated in the crime, had anything to do with it, even though Jenkins had admitted his involvement.  Petitioner could not be moved to change his story on that point.

Petitioner eventually admitted that he had both guns in his hands and fired all the shots.  He said he came in firing because the store had been robbed before and the clerks had been "bucking and bowing up" to resist robberies.  Petitioner said that he did not know that he had shot a clerk, and he felt bad when he heard about that on the news.  Petitioner said that he agreed to give a statement to police because he was trying to get his life right.  He did not expect any leniency from the police, but he wanted the judge or other authorities to know that he accepted responsibility for the crime, and he wanted to do his time and get his life back on track.  The interview then ended, after about 30 minutes.  Tr. 423-58.

Defense counsel argued that the State had not shown that the confession was free and voluntary because (1) drugs were present at the scene of the arrest, (2) a number of other officers were involved with Petitioner's detention and they did not all testify as to how they treated him, and (3) two detectives double teamed Petitioner.  The trial judge ruled that, "Based upon the testimony, the defendant was not on drugs or alcohol and was not forced or coerced."  His "statements were freely and voluntarily made" and met all requirements to be admitted as evidence.  Tr. 464-67.  Petitioner repeated his arguments on direct appeal. The appellate court reviewed the relevant evidence and legal principles and concluded that the trial court's finding of a free and voluntary statement was supported by the evidence.  Tr. 559-61.  The Supreme Court of Louisiana denied writs without comment.  Tr. 627.

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined

by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d).

A state court's decision is contrary to clearly established Supreme Court precedent when it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts.  Pape v. Thaler, 645 F.3rd 281, 287 (5th Cir. 2011).  A state court makes an unreasonable application of clearly established federal law when it identifies the correct governing legal principle from the Supreme Court's decisions but applies it to the facts in a way that is not only incorrect but objectively unreasonable.  Renico v. Lett, 130 S.Ct. 1855, 1862 (2010).

The state court's decision in this case is fully supported by the record.  There was written evidence and an orally recorded statement that showed Petitioner was given full Miranda warnings and volunteered to waive his rights and make a statement.  There was no evidence whatsoever that Petitioner was intoxicated by any substance; all of the testimony was to the contrary.  Even when a defendant suffers from a mental condition, that alone does not render his statement involuntary.  Coercive police activity is a necessary predicate to finding that a confession is not voluntary within the meaning of the Fourteenth Amendment.  Colorado v. Connelly, 107 S.Ct. 515 (1986); Martinez v. Quarterman, 270 Fed. Appx. 277, 290 (5th Cir. 2008.  There was no evidence whatsoever that police engaged in any coercive or improper activity that could render the statement involuntary.  Petitioner explained why

he elected to make the recorded statement, and he gave no hint of an undue influence. Petitioner has not met his heavy burden of showing that the state court's decision that his statement was voluntarily made was both incorrect and an objectively unreasonable application of clearly established Supreme Court law regarding the voluntariness of statements.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 4th day of February, 2015.

Mark L. Hornsby
U.S. Magistrate Judge